FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y. 8/2/11
★ AUG 0 1 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

CHRISTOPHER CHANDLER,

                Petitioner,

- against -

SUPERINTENDENT OF UPSTATE
CORRECTIONAL FACILITY,

                Respondent.

------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

10 Civ. 2347 (BMC)

**COGAN**, District Judge.

This matter is before me on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury convicted petitioner of robbery in the third degree in connection with the robbery of a cell phone and $250 from a livery cab driver. He was sentenced to three to six years' imprisonment. The jury acquitted him of the more serious charge of robbery in the first degree, rejecting the prosecution's contention that he used a gun during the robbery.

Familiarity with the facts of the case is assumed as supplemented by references below to the background relating to each of petitioner's three points of error. The three points are: (1) the trial court erred in admitting testimony by a detective that inferentially disclosed the contents of a conversation between the detective and a non-testifying witness; (2) the prosecution failed to turn over a statement of that non-testifying witness; and (3) trial counsel was ineffective. For the reasons set forth below, the petition is denied and the case is dismissed.

## I.      Evidentiary Claim

Just before opening statements, the prosecutor alerted the trial judge that she intended to elicit certain testimony from the lead detective on the case. She proffered that the detective was going to testify that he obtained petitioner's name and considered him a suspect after speaking to a woman named Laura Morgan and her daughter Dominique Morgan. The detective had identified Dominique as a passenger in the cab at the time of the robbery. The prosecutor's proffer indicated that the detective would not be asked and would not disclose what Dominique said to him, but only that after speaking to Dominique, he believed petitioner was a suspect.

Petitioner's trial counsel objected that the testimony would be hearsay because the jury would necessarily conclude that Dominique identified petitioner as a passenger with her in the cab. The prosecutor responded that the detective's testimony was not being offered for the truth of whatever Dominique had said to him, but only as background to explain why the detective turned the investigation towards petitioner. The trial court overruled the objection on that basis and the testimony came in at trial in the following form:

> Q: Now, after this conversation [with Dominique] and after the detective work that you did in this case, did there come a time that you were able to learn the name of a suspect?
> 
> A: Yes.
> 
> Q: And what was the suspect's name?
> 
> A: Christopher Chandler.

On direct appeal, petitioner challenged this ruling on both Confrontation Clause and hearsay grounds. The Appellate Division found the Confrontation Clause objection "unpreserved for appellate review" because it had not been raised at trial, and, alternatively,

because it was "without merit." People v. Chandler, 59 A.D.3d 562, 872 N.Y.S.2d 283 (2d Dept.), leave to app. den., 884 N.Y.S.2d 705 (2009). It also found the hearsay objection without merit since the testimony was offered "not . . . for its truth, but rather to explain police actions and the sequence of events leading to [petitioner's] arrest." Id. In addition, the Appellate Division found that "the challenged testimony did not implicate [petitioner] as the perpetrator of the crime." Id.

A. **The Confrontation Clause Claim**

When a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991)). A federal court will only review procedurally barred claims if a petitioner "can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038 (1989) (citations omitted).

The Appellate Division's invocation of a procedural bar as to petitioner's Confrontation Clause claim was proper. Both federal and state courts have held that a hearsay objection is insufficient to preserve a Confrontation Clause claim. See United States v. Hardwick, 523 F.3d 94, 98 (2d Cir 2008); United States v. Dukagjini, 326 F.3d 45, 60 (2d Cir. 2002); People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111 (2001); People v. Lopez, 25 A.D.3d 385, 386, 808 N.Y.S.2d 648 (1st Dept. 2006). Petitioner has not demonstrated cause, and it is clear that petitioner suffered no prejudice. The testimony only showed that the detective had conducted an investigation (including a conversation with Dominique) that led him to petitioner. And, as

discussed below, petitioner gave a statement at the time of his arrest admitting that he was in the cab with Dominique. This statement was admitted into evidence. Petitioner therefore suffered no prejudice when the detective disclosed that his conversation with Dominique was part of what led him to petitioner.

B. **The Hearsay Claim**

It is well settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983); see also Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475 (1991). Rather, I must make a two-part inquiry: "(1) whether the trial court's evidentiary ruling was erroneous under New York State law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial."[1] Kotler v. Woods, 620 F. Supp. 2d 366, 392 (E.D.N.Y. 2009) (citing Wade v. Mantello, 333 F.3d 51, 59 n.7 (2d Cir. 2003); Davis v. Strack, 270 F.3d 111, 123-24 (2d Cir. 2001)). An evidentiary error does not amount to the denial of a fundamentally fair trial unless the erroneously admitted evidence was "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks omitted)).

Under New York law, it is within the trial court's discretion to admit evidence of an out-of-court statement "not for its truth, but to provide background information as to how and why

---

[1] Of course, habeas relief is not available for errors of state law. See Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006). Nevertheless, the first step in determining whether petitioner was denied a fundamentally fair trial because of a state court's evidentiary ruling involves an inquiry in to the propriety of that ruling. See Davis v. Strack, 270 F.3d 111, 123-24 (2d Cir. 2001).

4

the police pursued and confronted [a] defendant." People v. Tosca, 98 N.Y.2d 660, 661, 746 N.Y.S.2d 276 (2002); see also People v. Gregory, 78 A.D.3d 1246, 1246-47, 910 N.Y.S.2d 295 (3d Dept. 2010). Here, the trial judge admitted the detective's testimony over petitioner's hearsay objection in order to explain how the detective came to identify petitioner as a suspect. I see nothing erroneous about this ruling under New York law.[2]

Even if I were to conclude that the trial judge erroneously admitted the hearsay evidence, petitioner still would not be entitled to habeas relief because it is clear that admission of the challenged testimony did not deprive him of a fundamentally fair trial. First, there was no dispute that petitioner was in the livery cab with Dominique on the date in question. Counsel admitted petitioner's presence during his opening statement.[3] And petitioner gave a statement to the detective in which he admitted being in the cab with Dominique, getting into an argument with her, and stealing the driver's cell phone. This statement was admitted into evidence.

Second, there was strong evidence, apart from the challenged hearsay, showing that petitioner committed the robbery. In addition to the petitioner's own statement, the prosecution offered the testimony of the cab driver, who described how he came to be robbed. Although he could not identify petitioner as the perpetrator at trial, he did identify petitioner as the man who robbed him at a line-up conducted a little over two months after the incident.[4] Specifically, the driver testified that he viewed a line-up and identified "number one" as the man who robbed him. Thereafter, the detective testified that the driver viewed a line-up and "instantaneously" picked

---

[2] I note that the result would likely be different under federal law. See United States v. Gomez, 617 F.3d 88, 91-92 (2d Cir. 2010).

[3] He stated: "[Petitioner] was in the cab with his girlfriend, or former girlfriend, Dominique Morgan. There was a dispute between them. However, once we get past that part of the case, the defendant disputes everything that the district attorney has just uttered to you."

[4] The record suggests that petitioner's appearance at the time of the robbery was different than his appearance at trial.

5

number one as the man who robbed him. The detective also testified that petitioner was number one.

In addition, an employee from Sprint/Nextel testified about phone calls that were made from the driver's phone immediately after petitioner stole it. Through this witness, the prosecution introduced the driver's cell phone records for April 2006. The driver picked up petitioner and Dominique a little after 1:00 a.m. on April 8, 2006. The Sprint/Nextel witness testified about a series of outgoing phone calls that were made from the driver's phone on April 8, starting at 12:59 a.m. and ending at 5:26 p.m. (when the driver had his cell phone cut off). With the exception of two calls made to the driver's voicemail number, the driver did not call any of the outgoing numbers during April 2006 except for during that period on April 8. Moreover, 11 of those calls were made to Dominique's cell phone. And a computer analyst for the Department of Corrections testified about phone calls petitioner made from his personal identification number while he was housed at Rikers Island (from June to August 2006). According to the analyst, while at Rikers Island, petitioner's personal identification number was used to make phone calls to four of the numbers that were called on April 8.[5]

In other words, there was strong evidence showing that (1) petitioner stole the driver's cell phone on the morning of April 8; (2) numerous phone calls were made on that cell phone from the time when petitioner stole it until the time that the driver had the phone cut off; (3) the driver did not call any of those numbers (except for the two calls to the voicemail) at any other time during the month of April 2006; (4) 11 of the phone calls made from the driver's phone on April 8 were to Dominique's cell phone; and (5) petitioner's personal identification number was

---

[5] One of the calls was made to 718-453-4410. Dominique's cell phone number was 917-453-4410.

used to call four of the same numbers while petitioner was housed at Rikers Island. Based on this, there was strong evidence by which the jury could conclude, beyond a reasonable doubt, that petitioner stole the driver's cell phone on the morning of April 8 regardless of what, if any, inferences it drew from the detective's references to his conversation with Dominique.

Finally, the prosecutor did not unduly focus or rely on the hearsay evidence. Rather, she made the briefest of references to the conversation during her opening[6] and again during the detective's direct examination. She then indirectly referenced it during her summation,[7] but in no way relied on or stressed it. In fact, during her summation, the prosecutor attempted to distance herself from Dominique because petitioner made a point of focusing on the fact that Dominique was not called to testify at trial.[8]

In sum, this was not a case where petitioner's identity or presence at a crime scene was determinative of his guilt. Rather, the only issues the jury needed to resolve was whether the prosecution proved, beyond a reasonable doubt, that petitioner stole money and a cell phone from the driver and, if it did, whether it also proved that petitioner used a gun. The prosecutor's vague references to a conversation the detective had with Dominique in no way impacted those determinations.

---

[6] She stated: "[The detective] . . . spoke to a woman named Laura Morgan, and he also spoke to her daughter, Dominique Morgan. And he did other detective work on this case. And after doing the detective work, he came up with the name Christopher Chandler. And the defendant, Christopher Chandler, was placed under arrest."

[7] She stated: "[I]ts through that number that the detective tracked down Dominique." Notably, she did not re-state that the detective discovered petitioner's identity after meeting with Dominique.

[8] For example, she stated: "And finally, regarding Dominique, aside from the fact that we know she was [petitioner's] girlfriend, we have no need for Dominique. We have [the cab driver], and he is the person that lived and breathed this crime, and he told you what happened."

7

## II. Rosario/Brady Claim

A federal court may not consider a petitioner's application for habeas relief unless the petitioner has first exhausted the remedies available in state court. See 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires that the petitioner first "fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)." Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347 (2004) (internal quotation marks omitted); see also Bierenbaum v. Graham, 607 F.3d 36, 47 (2d Cir. 2010). A claim has been fairly presented if the petitioner has "informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Bierenbaum, 607 F.3d at 47 (quoting Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir. 2003)) (internal quotation marks omitted).

When presented with an unexhausted claim, a federal habeas court's actions are guided by two principles. First, a claim that is not exhausted may nonetheless be denied if it is plainly without merit. 28 U.S.C. § 2254(b)(2); see also Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528 (2005). Second, where a petitioner failed to exhaust a claim in state court but can no longer obtain review of that claim because he has procedurally defaulted, that claim is "deemed exhausted." DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citing Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038 (1989); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)).

Petitioner's second claim, which he raises for the first time in his habeas petition, is that the prosecution failed to disclose evidence favorable to his defense. Specifically, he alleges that the prosecution failed to give him a "copy of Dominique Morgan [sic] statement who was supposed to have been in the car with defendant during alleged robbery." He cites no case or federal law that would assist this Court in determining whether petitioner is alleging a Rosario

violation under New York law, or a Brady violation under federal law. Regardless of how this Court construes petitioner's claim, it is unexhausted and dismissed as plainly without merit.

A Rosario violation, which is codified at N.Y. Crim. Proc. Law §240.45(1)(a), is not subject to federal habeas review because a violation of this New York evidentiary rule does not implicate federal constitutional law. See, e.g., MacKenzie v. Portuondo, 208 F. Supp. 2d 302, 315 (E.D.N.Y. 2002). Nevertheless, no Rosario violation occurred here because the prosecution is only required under Rosario and N.Y. Crim. Proc. Law §240.45(1)(a) to provide the defendant with statements of witnesses it intends to call at trial. In the present case, the prosecutor indicated on the record that she had no intention of calling Dominique and, in fact, Dominique did not testify.

In contrast, a Brady violation is cognizable on federal habeas review. The prosecution's responsibility under Brady is clear: "To the extent that [a] prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." Leka v. Portuondo, 257 F.3d 89, 98 (2d Cir. 2001) (quoting United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998)). There are three components to a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936 (1999). The Brady obligation applies to exculpatory or impeachment material even when related to a non-testifying hearsay declarant. See United States v. Jackson, 345 F.3d 59, 71 (2d Cir. 2003). The obligation also applies to material exculpatory or impeachment information that is not in written form. See United States v. Rodriguez, 496 F.3d 221, 222 (2d Cir. 2007).

9

Petitioner's claim of a Brady violation fails. He has not presented any proof that such a statement by Dominique exists, and the record reveals none. In addition, petitioner has failed to indicate what Dominique's alleged statement would include and how it would be favorable to him as exculpatory or impeachment evidence. See Mallet v. Miller, 432 F. Supp. 2d 366, 377-78 (S.D.N.Y. 2006); Franza v. Stinson, 58 F. Supp. 2d 124, 154 (S.D.N.Y. 1999).[9]

## III. Ineffective Assistance of Trial Counsel

Petitioner raised his claim of ineffective assistance of trial counsel for the first time in a motion to the Supreme Court of New York, Kings County, to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. The components of his ineffective assistance claim were difficult to discern, conclusory, and asserted without any factual support. The § 440 court reasonably read them as: (1) failing to object to the detective's hearsay statement; (2) failing to request a missing witness charge, or alternatively, failing to cause the trial court to enforce a subpoena against the witness; and (3) failing to investigate his alibi.[10] The court denied the motion, finding that petitioner's claims were procedurally barred and without merit; the Appellate Division denied leave to appeal. People v. Chandler, No. 4620/06 (Sup. Ct. Kings Co. July 13, 2010) (n.o.r.), leave to app. den., No. 2010-08151 (2d Dept. Mar. 3, 2011) (n.o.r.).

In the instant habeas corpus petition, petitioner reasserts two of the points he raised in his § 440.10 motion. First, he argues that his lawyer failed to have the trial court enforce a subpoena

---

[9] The record reflects that, during the Government's investigation, Dominique stated that petitioner was not carrying a gun on the date of the robbery. To the extent petitioner's Brady claim is premised on this statement, it is clear that the claim is without merit. First, the statement was disclosed. Second, petitioner was acquitted of robbery in the first degree because the jury found that the Government failed to prove that petitioner used a gun during the commission of the robbery, so he suffered no prejudice.

[10] In addition, there is a sentence in petitioner's § 440.10 motion stating that "defendants trail [sic] attorney ... placing [sic] defendant the seen [sic] of the crime after complaining witness testified that the defendant is not the person who robbed him." The § 440.10 court did not comment on this portion of petitioner's motion.

10

requiring Dominique to appear (the "subpoena enforcement claim"). Second, he argues that his lawyer failed to investigate his alibi and placed him at the scene of the crime even though the driver could not identify him as the robber in the courtroom (the "crime scene presence claim").

I am procedurally barred from reviewing petitioner's subpoena enforcement claim. The § 440 court denied this claim because, *inter alia*, it was an on-the-record claim of ineffective assistance. Specifically, the court cited N.Y. Crim. Proc. Law § 440.10(2)(a), (c), and held that because "[petitioner] was in a position to raise [this claim] when he perfected his previous appeal ... [his] motion is procedurally barred." Accordingly, the § 440 court's decision as to this claim "fairly appear[s] to rest primarily on state procedural law."[11] Jimenez v. Walker, 458 F.3d 130, 145 (2d Cir. 2006); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (noting that a decision which rests on a state law ground is still subject to procedural bar even if state court alternatively rules on the merits of a federal claim).

There is nothing exorbitant about the invocation of this procedural bar. See Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008). Before trial started, petitioner's counsel stated, on the record, that he was "trying to get [Dominique] in [court]," but had been unsuccessful. In fact, he claimed that he "had an investigator on it." Then, in a colloquy in connection with his request for a missing witness instruction, the prosecutor stated that petitioner's counsel had subpoenaed Dominique to appear, and counsel himself stated that he had "called her about nine – six to nine times," that he "spoke to her once, and after that she completely eluded [him]." If the failure to seek court-assistance in enforcing the subpoena was ineffective assistance (as opposed to a

---

[11] Although the Court found that petitioner's motion was procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(a) and (c), only subsection (c), which relates to the unjustifiable failure to raise a claim on a previously perfected appeal, could apply to the subpoena enforcement claim. Section 440.10(2)(a) relates to a claim that has previously been denied on the merits. As petitioner raised this claim for the first time in his § 440 motion, this claim was never previously decided on the merits, and therefore not subject to analysis under subsection (a).

11

strategic decision to try for a missing witness instruction), it was ineffective assistance that was apparent on the record.

New York law is well settled that where a claim of ineffective assistance of counsel is based on errors or omissions that appear on the record, such claims must be raised on direct appeal or they will be deemed procedurally barred when raised collaterally. See People v. Hickey, 277 A.D.2d 511, 511, 714 N.Y.S.2d 821 (3d Dept. 2000); People v. Wong, 256 A.D.2d 724, 725, 682 N.Y.S.2d 689 (3d Dept. 1998).[12] And federal law is equally well settled that the procedural bar in this context is an adequate and independent state law ground for the decision that will be recognized on habeas corpus review. See Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003); Collier v. Lee, No. 08-CV-3441, 2011 WL 2297727, at *5 (E.D.N.Y. June 7, 2011). Petitioner has suggested grounds for neither cause, nor prejudice, nor manifest injustice resulting from the recognition of the state court's ruling.[13] The claim is therefore procedurally barred.

Although petitioner raised his crime scene presence claim in his § 440 motion, the court did not address it in its opinion, nor did it include a catch-all holding disposing of any additional arguments – i.e., "defendant's remaining claims are without merit." Accordingly, this claim is subject to *de novo* review. See Norde v. Keane, 294 F.3d 401, 409 (2d Cir. 2002); Diaz v. Graham, No. 07 CV 5379, 2010 WL 6428635, at *5 (E.D.N.Y. July 13, 2010).

---

[12] Petitioner was represented by different counsel on appeal. See People v. Hoffler, 74 A.D.3d 1632, 1633-34, 906 N.Y.S.2d 115 (3d Dept. 2010) (noting that on-the-record ineffective assistance claims are not subject to § 440.10(c)(2) procedural bar when defendants are represented by their trial counsel on appeal).

[13] Petitioner suggests that his reason for failing to raise his claim of ineffective assistance of counsel on direct appeal is that his appellate counsel did not believe there were grounds for raising the issue. However, "ineffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim." Disimone v. Phillips, 461 F.3d 181, 191 (2d Cir. 2006). As petitioner never raised a claim of ineffective assistance of appellate counsel in state court, that claim cannot constitute cause for procedural default of his ineffective assistance of trial counsel claim.

Petitioner's crime scene presence claim is analyzed under the two prong test established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under Strickland, to establish a claim of ineffective assistance of counsel, petitioner must demonstrate: (1) that "counsel's representation fell below an objective standard of reasonableness"; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. In applying this standard, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Petitioner cannot meet either of Strickland's two prongs. As discussed above, petitioner's statement to the detective – that he was in the cab with Dominique on the morning of the robbery, that he argued with her, and that he took the driver's cell phone – was admitted at trial. This statement was corroborated by the driver's testimony and by the driver's cell phone records. Petitioner's counsel thus was in no position to deny petitioner's presence at the scene. His concession that petitioner was in the cab therefore reflected a considered strategy in which petitioner would acknowledge his presence in the cab, but contest the commission of a robbery. And this strategy was partially successful in so far as petitioner avoided a conviction on the most serious charge he faced – robbery in the first degree.

Moreover, counsel obviously could not have known that the cab driver, who had previously identified petitioner as the man who robbed him, would be unable to identify petitioner in court. And counsel could not then contest petitioner's presence at the crime scene because he already acknowledged petitioner's presence during his opening statement. Finally, petitioner has offered no factual support regarding his alleged alibi, and, as discussed above, admitted his presence at the scene to the detective. Under these circumstances, it is clear that

13

counsel's failure to contest petitioner's presence in the cab was objectively reasonable and that petitioner did not suffer any prejudice as a result.

## CONCLUSION

For the reasons set forth above, the petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962). The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

_____
U.S.D.J.

Dated: Brooklyn, New York
       August 1, 2011